

**KROLL HEINEMAN CARTON**
Attorneys-at-Law

A New Jersey Limited Liability Company

Metro Corporate Campus I
99 Wood Avenue South
Suite 307
Iselin, New Jersey 08830
Tel: 732-491-2100
Fax: 732-491-2120

**ATTORNEYS**
Albert G. Kroll *
Raymond G. Heineman, Jr. ▶
Michael T. Carton ◾
Curtiss T. Jameson
Bradley M. Parsons
Seth Ptasiewicz ▶

**BAR ADMISSIONS**
† NJ & PA Bar
▲ NJ & NY Bar
* NJ, PA & DC Bar
◾ NJ, NY & DC Bar
▶ NJ, NY & PA Bar

www.krollfirm.com

May 12, 2017

**VIA ELECTRONIC FILING**
Mr. William T. Walsh, Clerk
Martin Luther King Building
& U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

> Re: **Tricon Enterprises, Inc. v. NJ Building Laborers' Statewide Benefit Funds, et al.**
> **Civil Action No.: 17-cv-2168**

Dear Mr. Walsh:

This Firm represents Respondent New Jersey Building Laborers' Statewide Benefit Funds and the Trustees thereof ("Respondent") in connection with the above-referenced matter. Enclosed for filing please find the following documents:

(1) Civil Cover Sheet (for Cross-Petition);
(2) Notice of Motion to Dismiss Declaratory Complaint, per Fed. R. Civ. P. 12(b)(6); and Motion to Confirm Arbitration Award and Entry of Judgment;
(3) Cross-Petition to Confirm Arbitration Award;
(4) Brief in Support of Motion to Dismiss and to Confirm Arbitration Award;
(5) Certification of Bradley M. Parsons, Esq.;
(6) Proposed Order;
(7) Proposed Judgment; and
(8) Certificate of Service.

Thank you for your attention to this matter.

Very truly yours,

*S/ BRADLEY M. PARSONS*

BRADLEY M. PARSONS

BMP:jc
Enclosures

cc:   Kimberly Kemple, Delinquency Manager (via first-class mail w/encl.)
      Ronald Tobia, Esq. (via first-class & certified mail, r.r.r., w/encl.)



JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Tricon Enterprises, Inc. | (Cross-Petitioner) New Jersey Building Laborers Statewide Benefit Funds |

| **(b)** County of Residence of First Listed Plaintiff    Monmouth | County of Residence of First Listed Defendant    Hudson |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)** Attorneys *(Firm Name, Address, Email and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Ron Tobia, Esq.<br>Tobia Sorger Esqs., LLC<br>500 Supor Blvd.Harrison, New Jersey 07029 | Bradley M. Parsons, Esq.<br>Kroll Heineman Carton, LLC<br>Metro Corp. Campus I, 99 Wood Avenue South, Suite 307, Iselin, NJ |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

*PERSONAL INJURY*
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

*PERSONAL INJURY*
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

*Habeas Corpus:*
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

*Other:*
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☒ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Employee Retirement Income Security Act of 1974 s. 515, as amended, 29 USC s. 1132, 1145; FAA s. 9, 9 USC 9

Brief description of cause:
Confirmation of arbitration award

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $       CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE   Claire C. Cecchi      DOCKET NUMBER   17-cv-2168

DATE   05/12/2017

SIGNATURE OF ATTORNEY OF RECORD   s/Bradley M. Parsons

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

Bradley M. Parsons, Esq. (BP8305)
**KROLL HEINEMAN CARTON, LLC**
Metro Corporate Campus I
99 Wood Avenue South, Suite 307
Iselin, New Jersey 08830
Tel: (732) 491-2100
Fax: (732) 491-2120
*Attorneys for Petitioners*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| TRICON ENTERPRISES, INC., | ) | Hon. Claire C. Cecchi |
| | ) | |
| Petitioner, | ) | Civil Action No. 17-cv-2168 |
| | ) | |
| v. | ) | **CIVIL ACTION** |
| | ) | |
| NEW JERSEY BUILDING LABORERS | ) | **NOTICE OF MOTION TO** |
| STATEWIDE BENEFIT FUNDS AND THE | ) | **DISMISS PETITION TO VACATE** |
| TRUSTEES THEREOF, | ) | **ARBITRATION AWARD AND** |
| | ) | **DISMISS COMPLAINT FOR** |
| Respondent. | ) | **DECLARATORY JUDGMENT, AND** |
| | ) | **TO CONFIRM ARBITRATION** |
| | | **AWARD** |
| | | **AND ENTRY OF JUDGMENT** |

To:

Ronald L. Tobia, Esq.
Tobia & Sorger, Esqs., LLC
500 Supor Boulevard
Harrison, New Jersey 07029

**PLEASE TAKE NOTICE** that, on June 5, 2017, at 9:00 in the forenoon, or as soon thereafter as counsel may be heard, the undersigned attorneys for Respondent New Jersey Building Laborers Statewide Benefit Funds and the Trustees thereof ("Respondent") shall move for an Order: (1) dismissing the Petition to Vacate Arbitration Award; (2) Dismissing Petitioner's Complaint for a Declaratory Judgment, per Fed.R.Civ.P. 12(b)(6); and (3) confirming the Arbitration Award and Entry of Judgment at the United States Courthouse, Newark, New Jersey.

**PLEASE TAKE FURTHER NOTICE** that counsel shall rely upon the attached Brief in Support of Motion to Dismiss Petition to Vacate Arbitration Award, Dismiss Complaint for Declaratory Judgment and to Confirm Arbitration Award and Entry of Judgment; Certification of Bradley M. Parsons, Esq.; Proposed Form of Order; and Proposed Form of Judgment.

**KROLL HEINEMAN CARTON, LLC**
*Attorneys for Petitioners*

*S/ BRADLEY M. PARSONS*

By: _____

BRADLEY M. PARSONS

DATED: May 12, 2017

Bradley M. Parsons, Esq. (BP-8305)
**KROLL HEINEMAN CARTON, LLC**
Metro Corporate Campus I
99 Wood Avenue South, Suite 307
Iselin, New Jersey 08830
Tel: (732) 491-2100
Fax: (732) 491-2120
*Attorneys for Petitioners*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRICON ENTERPRISES, INC.,　　　　　) | Hon. Claire C. Cecchi |
| ) | |
| Petitioner,　　　　) | Civil Action No. 17-cv-2168 |
| ) | |
| v.　　　　　　　　　　) | **CIVIL ACTION** |
| ) | |
| NEW   JERSEY   BUILDING   LABORERS ) | **CROSS PETITION TO CONFIRM** |
| STATEWIDE  BENEFIT  FUNDS  AND  THE ) | **ARBITRATION AWARD** |
| TRUSTEES THEREOF,　　　　　) | |
| ) | |
| Respondent/Cross-Petitioner.　) | |

New Jersey Building Laborers' Statewide Benefit Funds ("Funds") and the Trustees thereof ("Trustees") (collectively, "Respondent/Cross-Petitioner") by their undersigned attorneys, as and for their Cross Petition, allege and say:

1.　　　Respondent/Cross-Petitioner moves this Court for an Order, pursuant to the Federal Arbitration Act, ("FAA"), 9 U.S.C.A. §§ 9 and 13, confirming the award of the Arbitrator issued in favor of the Funds on February 23, 2017, and directing that judgment be entered accordingly. This Cross Petition is made on the following grounds.

2.　　　At all times relevant, the Funds were, and still are, trust funds within the meaning of Section 302(c)(5) of the Labor Management Relations Act, ("LMRA"), 29 U.S.C. §186(c)(5), and employee benefit plans within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132 (e) and (f), and are administered at 3218 Kennedy

Boulevard, Jersey City, New Jersey 07306.

3.     The Trustees of the Funds are fiduciaries within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).   The Trustees maintain their principal place of business at 3218 Kennedy Boulevard, Jersey City, New Jersey 07306.

4.     Upon information and belief, at all times relevant, Petitioner Tricon Enterprises, Inc. ("Tricon" or "Petitioner") was, and still is, a business entity duly organized and existing under the laws of the State of New Jersey, with a principal office located at 322 Beer Street, Keyport, New Jersey 07735.

5.     The jurisdiction of this Court is based upon Section 502 (e) and (f) of ERISA, as amended, 29 U.S.C. §1132(e) and (f), and FAA, 9 U.S.C.A. § 9. Venue properly lies in this District pursuant to 29 U.S.C. § 1332(e)(2) because the Funds maintain their principal offices in New Jersey and are administered therein and the underlying arbitration took place in New Jersey.

6.     Petitioner is a signatory to collective bargaining agreements ("CBA"), which are valid enforceable, and irrevocable agreements and which compelled contributions to the Funds, during the periods relevant to this Cross-Petition. A copy of the pertinent portions of the CBAs and the applicable Short Form Agreements binding Petitioner thereto are attached as Exhibits B and C to the Certification of Bradley M. Parson, Esq. ("Parsons Certification").

7.     Petitioner is also bound by the Declaration of Trust of the Funds.  A copy of the pertinent portions of the applicable Trust Agreement is attached as Exhibit G to the Parsons Certification. Under the terms of the applicable CBA and Trust Agreement, Petitioner is required to make contributions to the Funds.

8.     The Trust Agreement provides: "The Trustees may take any action necessary or appropriate to enforce payment of contributions, interest damages, and expenses provided for herein."  In accordance with the Trust Agreement, a Permanent Arbitrator has been appointed to

resolve claims of delinquent contributions to the Funds.

9.    A payroll compliance audit of Tricon for the period from January 1, 2010 through December 31, 2012 ("audit period") revealed that it had failed to make required contributions to the Funds in the amount of $264,837.41. Tricon disputed the audit findings and argued that the matter was not arbitrable.

10.    On or about October 28, 2015, a hearing was conducted before the duly designated arbitrator, J.J. Pierson, Esq. ("Arbitrator"). After considering all of the evidence presented at the hearing, the Arbitrator issued an Opinion and Award dated February 23, 2017 ("Award") against Petitioner.    A copy of this Award is attached as Exhibit 1 to this Cross-Petition.

11.    Specifically, the Arbitrator found that: this matter was arbitrable pursuant to Tricon's CBA with the New Jersey Building Construction Laborers' District Councils and Local Union 3 and 77 of the State of New Jersey ("Union"); Tricon violated the CBA by failing to make required contributions; and no further revisions to the audit findings were merited. *See* Exhibit 1 to this Cross-Petition, ¶¶17 – 21 (emphasis in original).

12.    The Arbitrator ordered "in accordance with the provisions of Article XVI, the Employer shall pay a principal amount of **$264,837.41** to the Funds, plus **$168,222.18** in interest, **$18,817.50** in audit costs; **$52,967.40** in liquated damages; reasonable attorneys' fees in the amount of **$66,209.25**; and the Arbitrator's fee of **$5000.00**." *See See* Exhibit 1 to this Cross-Petition, ¶¶ 21 – 22 (emphasis in original).

13.    The Funds promptly served a copy of the Award upon Petitioner. To date, Petitioner has failed to comply with the Award.

**WHEREFORE**, Respondent/Cross-Petitioner prays for the following relief:

(a)    An Order confirming the Arbitration Award;

(b)    Entry of a judgment or decree by the clerk which may be enforced as any other

judgment or decree;

(c)     Costs of this Cross Petition and of all subsequent proceedings and disbursements

        including, but not limited to, court's filing fee in the amount of $400.00;

(d)     Costs, attorney's fees, and interest thereupon, as provided by law; and

(e)     Such other relief as the Court deems equitable.


                              **KROLL HEINEMAN CARTON, LLC**
                              *Attorneys for Respondent/Cross-Petitioner*

                              *S/ BRADLEY M. PARSONS*
                  By:     _____
                              BRADLEY M. PARSONS

DATED:   May 12, 2017

Ex. 1

| | | |
|---|---|---|
| In the Matter of Arbitration | ) | Before: J. J. PIERSON, Esq. |
| | ) | Arbitrator |
| between | ) | |
| | ) | |
| NEW JERSEY BUILDING LABORERS' | ) | |
| STATEWIDE BENEFIT FUNDS | ) | |
| ("Funds") | ) | **FINDINGS OF AUDIT,** |
| | ) | **COLLECTION AWARD** |
| -and- | ) | **and ORDER** |
| | ) | |
| TRICON ENTERPRISES, INC. | ) | |
| ("Employer") | ) | Re: Funds Contributions |
| _____ | ) | |

Appearing for the Funds:   Appearing for the Employer:
Bradley Parsons, Esq.    Jill Sorger, Esq.
Kimberly Kemple, NJBLSBF  Denise Petrizzo, President
Anthony Sgroi, Auditor    Peggy Van Fechtmann

   This matter was initially presented to the undersigned Arbitrator on October 28, 2015 pursuant to Articles X ("Wages and Fringe Benefits"), XV ("Fringe Benefit Funds") and XVI ("Collection of Amounts Due Under Agreement") of effective "Collective Bargaining Agreements" by and between the Northern New Jersey Building Laborers' District Council, Central New Jersey Building Laborers' District Council, Southern New Jersey Building Laborers' District Council and the Building, Site and General Construction Contractors and Employers," (see Joint Exhibit, J-1, hereinafter, the "Local 3 Agreement") and the "Trade Agreement Between Asbestos, Lead & Harzardous Waste Laborers Local 78 of the Laborers' International Union of North America and the Building Contractors Association of New Jersey" (see J-3, hereinafter, the "Local 78 Agreement"). The parties were issued due notice of the hearing.

   Based upon the proofs, the undersigned Arbitrator **FINDS** that:

   1. The Employer is signatory to three (3) Short Form Agreements ("SFA", see J-2, and Footnote 8) with the Union, incorporating the terms and conditions of the referenced Agreements and inclusive of contract provisions which bind the Employer to contribute payments to defined benefit Funds under Article XV (collectively referred to as the "Funds") of the Agreement.

   2. The Funds are established by specific Agreement(s) and Declarations of Trust (hereinafter, the "Trust Agreement" ) and incorporated by reference in the Agreement.

In addition, the record establishes and this Arbitrator further **FINDS** that:

3. The Employer employed individuals covered by the terms and conditions of the Agreements during the audit period **January 1, 2010 through December 31, 2012.**

4. As specifically provided in Articles X and XV of the Agreement, the Employer was obligated to contribute to the New Jersey Building Laborers' Statewide Funds[1] for employees covered by the Agreement and the Funds are responsible to insure contributions are collected.

5. In accordance with the Agreement, an independent auditor performed an audit to determine whether the Employer submitted contributions on behalf of employees covered by, and in accordance with, the Agreement.

6. The "Independent Accountants' Report on Applying Agreed-Upon Procedures", as presented to the Trustees, was provided to the Employer and amended with corrections. (See F-1)

7. In the opinion of this Arbitrator, a fund contractually entitled to perform an audit of books and payroll records of an employer signatory to a collective bargaining agreement (and related trust fund documents incorporated by reference) may reasonably rely on the accuracy of said report in determining liability of the employer to the funds for delinquencies, incorrect contributions and a general breach of contract obligations.[2] It is the further belief of this Arbitrator that said report may serve as prima facie evidence of liability after notice of the claim has been given to the employer and the employer has been given reasonable opportunity to question the findings, offer information to adjust or amend the audit results and given the final opportunity to present evidence to correct alleged errors.

---

1. Employer contributions include: Article 15.00 - Pension; 15.10 - Welfare; 15.20 - Annuity; 15.30 - State Political Action Committee; 15.50- Laborers'-Employers' Cooperation and Education Trust; 15.60- Health & Safety; 15.70 - Training and Education; 15.80 - Industry Advancement. Employers are also obligated to submit (15.40) Organizing Dues and (15.45) Working Dues which are deducted from each employee's pay. The Funds also submitted the "Agreement and Declaration of Trust of the New Jersey Building Laborers Statewide Annuity Fund." (See J-1)

2. An "audit" referring to both the examination and verification of employer records and the resulting report, both of which are performed and/or prepared by an individual qualified to examine and report the results necessary for an accounting to the Funds. The firm of Schultheis & Panettieri, LLP, Certified Public Accountants serving as independent accountant, is qualified to perform the agreed-upon procedures and has prepared the report entered into this record and referred to in this Award. (See F-1)

8. Notice of the outstanding delinquency was forwarded to the Employer on March 30, 2015.

9. The Employer did not submit payment of the delinquency to the Funds;

10. Article XVI, Collection of Amounts Due Under Agreement states:

16.20 Legal Remedies for Collection of Delinquencies. The Trustees or Administration of any fund due contribution pursuant to this Agreement shall be entitled all rights accorded by law including but not limited to the right to demand, receive, sue for, and take such steps, including the institution and prosecution of or the intervention in any proceeding at law or in equity or in bankruptcy that may be necessary or desirable in their discretion to effectuate the payment and collection of any sum or sums and costs required to be paid to the Welfare, Pension or Annuity Funds under this Agreement.

16.30 Costs of Collection.

(a) In addition to the other provisions of this Agreement relating any such funds, in the event the Employer is delinquent in the payment of contributions to the Funds, or wages, the delinquent Employer shall also be required to pay attorneys' fees and costs and arbitration costs, if any, whenever the services of an attorney or arbitrator are necessary to recover the amount due. The Union or the Trustees, in their discretion, may also assess the Employer with interest at the current rate.

16.50 Fund Rights and Duties.

(c) The Employers agree that the trustees of the fund or funds shall have the right to require such reports by the Employers as are necessary to the fulfillment of the agreements and declarations of trusts and the contracts of insurance, as may apply. The trustees and insurers shall also have the right to inspect at all reasonable times the payroll, employment and such other records of the Employer as are pertinent to questions of the accuracy or comprehensiveness of the reports of the Employers.

11. As a result of the Audit Report and the Employer's alleged failure to make full contributions due and owing the Funds and remedy the determined deficiency and delinquency, the Funds pursued collection of the contributions due through the legal services of the law firm of Kroll Heineman Carton ("Counsel"), Metro Corporate Campus I, 99 Wood Avenue, Suite 307, Iselin, New Jersey.

12. Notice of the hearing was forwarded to Tricon.

13. At the arbitration hearing conducted on October 28, 2015, the Funds sought confirmation of the amounts claimed due and owing and Tricon presented explanations and defenses. Testimony was presented by both parties and post-hearing summations were submitted.

14. It was the Funds position that Tricon, a signatory Employer performing under the Agreement, failed to contribute fringe benefits to the Funds, as required, for employees performing covered-work during the audit period. According to the Funds, during the period audited, Tricon performed covered work without paying fringe benefits on individuals performing bargaining unit work and, when discovered, became responsible for "substantial" deficient and delinquent benefit payments. The Funds disputed Tricon's proffers that: 1) certain 'supervisors' were incorrectly reported as laborers, even if union-members, as they were not performing "covered work"[3]; 2) non-union laborers were incorrectly reported as laborers because they were performing non-covered "yard work"; and 3) cash disbursements were incorrectly reported, since the payments were made to a non-union sub-contractor performing non-union work and/or to various workers paid in cash.[4]

The Funds contended that the resulting audit report was reliable and, since the Employer did not produce evidence to rebut the audit findings, the report should be accepted, as accurate, in the principal amount of $264,837.41, plus interest ($168,222.18, as of March 25, 2015) and audit costs $18,817.50. The Funds further requested collection costs: liquidated damage, legal fees and the fee of the arbitrator.

---

3. In response to Tricon's assertion that laborers were supervisors, Mr. Sgroi testified that the time sheets produced by Tricon resulted in three (3) individuals identified as "supervisor" were not included in the audit report or removed from the audit report when reviewed. However, 295 hours were attributed to Eric Morro (claimed as a supervisor) as a deficiency on the audit report because benefits were purchased on his behalf (714 and 288 hours, respectively). As the witness explained, while labeled a "supervisor," he was "considered a laborer because benefits were paid." Other individuals were considered in the same manner.

With respect to work performed by non-union employees, the Funds cited Broadnex v. LVI Demolition Services, 2012 WL 1964487 (D.N.J. May 31, 2012) as requiring benefit for all work "covered" by the collective bargaining agreement's jurisdiction, without regard to union membership.

With respect to Tricon's claim that "yard work" was not covered, the Funds cited the language of Article 11 expressly including yard work within the jurisdiction of the Union.

4. Mr. Sgroi, a Director of the auditing firm of Schultheis & Panettieri, LLP, testified that he supervised the audit and was involved in the audit report due to issues of cash disbursements ("included because the hours were differed from the reported hours" and "some work subbed out to non-union contractors are out ... based on records"), employee labels on time sheets ('classifications' of employees ... "non union employees were included because hours attributed to their payroll label of "Laborers" and job locations ... or wages rates") and the question of supervisors ("Tricon opposed the inclusion of supervisors ... the payrolls were not given ... the Funds wanted more information"). As he concluded, the audit report contemplated all questions raised. On cross-examination, Mr. Sgroi acknowledged that the audit draws assumptions from underlying facts and based on documentation provided by the Employer. He noted that some of the yard work performed by the Employer was covered work under the Agreement.

15.    Tricon initially contended that the Arbitrator did not possess jurisdiction in the present matter as it relates to Tricon's "yard employees", as the issue of whether yard work is covered rests with the Court and not with the Arbitrator under the Local 3 and Local 78 Agreements.[5] Moreover, Tricon maintained that the work performed in it's "yard" is not covered by either Agreement (between Tricon and Local 78 and Local 3) and should not be included in the Audit Report of March 25, 2015.[6] Likewise, Tricon maintained that cash disbursements should not be included in the Audit Report, as the amounts reflected: a) payment to a "specialty company" (JRC) for "removing historical pieces" from a building, b) laborers performing "stucco" work on Tricon's building, and c) supervisors working outside the scope of the collective bargaining agreements[7]. Finally, Tricon asserted that the Funds failed to credit Tricon for amounts already paid to the Funds and, therefore, Tricon's remittance should be limited to $14,105.70.

_____

5. Tricon relied on "United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960) which established the principle that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Tricon argued it does not have a contractual obligation to submit to arbitration as the issues fall outside the scope of the applicable Agreements. Citing "Warrior & Gulf, Tricon contended that "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."

6. Tricon objected to the jurisdiction of the Arbitrator, arguing that Tricon's yard employees were not covered by the Laborers' Agreements and, therefore, the Arbitrator had no jurisdiction under the Local 3 and Local 78 Agreements. Denise Petrizzo, Tricon's owner (responsible for "bidding, running jobs, organizing the business .. .hiring and firing ... and labor relations") testified that Tricon did not make fringe benefit contributions for its yard employees because the work performed in Tricon's yard was not covered by the Local 78 or Local 3 collective bargaining agreements. She testified that "yard workers" perform work around the office and move materials and tools from the basement. She further noted that the "yard" is located one mile from the office, holds heavy equipment, and yard workers "prep jobs and get materials ... they are not on the job." As Ms. Petrizzo claimed, yard workers are "just labeled as laborers ... but not performing covered work." According to Ms. Petrizzo, both Local 3's Business Manager and Local 78's Business Manager confirmed that the work was not bargaining unit work and Tricon had conducted itself under that interpretation since becoming signatory to the Agreements.

7. Denise Petrizzo, Tricon's President, referred to "demo and asbestos supervisors" Carlos Contraras, Jody Siano ("a timekeeper ... keeping time for all the operators"), Eric Morro ("doesn't do laborers work ... does set-up work and keeps time"), Carlos Oseguera (who held a State of NJ Asbestos Control License, a State of NY Asbestos Certificate and a NY City Asbestos Control Certificate for the period of the audit), Lawrence Erghat and Ken Willis ("licensed in asbestos control"). She testified that wages "above the laborer's rate" were negotiated and paid to individuals based on their "knowledge" of the job.

16. In response, the Funds noted that: a) the State of New Jersey regulations require asbestos removal "supervisors" to be licensed and, to the extent that Tricon produced licenses, those individuals were removed from the Audit Report.  The Funds argued that Individuals without licenses could not be employed as "supervisor" nor removed from the Audit Report; b) the individuals included in the Audit Report who were Union Members, the Funds cited Section 1070(k), which stated: "Fringe Benefit contributions shall be due on all hours paid."

Upon analysis of the foregoing evidence, this Arbitrator further **FINDS** that,

17.   The matter is arbitrable under the Agreements entered into the record, as applicable to Tricon.[8]  By signing the Short Form Agreements, Tricon agreed to the terms and conditions of the Laborers' Agreement, including the arbitration procedures provided therein. While asserting Warrior & Gulf as controlling, Tricon failed to recognize that it agreed to arbitration. Warrior & Gulf expressed, "Unless the parties clearly and unmistakably provide otherwise, ...". As the parties did not agree to another procedure, arbitration applies.

18.   The Employer violated Articles X and XV of the Agreement by failing to make its required contributions to the funds between **January 1, 2010 through December 31, 2012** and was deficient and delinquent in the amount of **$264,837.41**.

19.   Funds Counsel, through evidence produced, established the Funds' right for collection and the Employer's failure to remit timely contributions to the Funds.

20.   Tricon's explanations, defenses and responses are not supported by reliable evidence and, as such, a) Tricon's "yard" employees are not excluded from the audit findings, as timesheets classified certain individuals as "Laborers", working at job site locations and, as payroll records demonstrated, having union deductions withheld, based on Article 11 of the Agreement which expressly includes the type of "yard work" described by Tricon's witness;

---

8. Ms. Petrizzo, as President, initially executed the Short Form Agreement ("SFA") on behalf of Tri-Enterprises on November 8, 2003.  She next executed a SFA on behalf of Tricon Enterprises Inc. on June 18, 2007 and July 2, 2010, the same day that she executed the Addendum to the Collective Bargaining Agreement ("Wage Freeze"), extending the terms and conditions of the full Collective Bargaining Agreement through April 30, 2013.

b) Tricon's cash disbursements are not excluded from the audit findings, as records (ie, invoices for a subcontractor, non-union workers and employees working off the payroll) were not produced to evidence the type of work performed; and  c). Tricon's employees identified as supervisors, were not excluded from the audit findings.

21. Tricon's request for the audit to be reduced shall be denied and the total amount to be remitted by Tricon under the audit shall not be further reduced.[9]

22. As such, and in accordance with the provisions of Article XVI, the Employer shall pay a principal amount of **$264,837.41** to the Funds, plus **$168,222.18** in interest, **$18,817.50** in audit costs; **$52,967.40** in liquidated damages; reasonable attorneys' fees in the amount of **$66,209.25**; and the Arbitrator's fee of **$5,000.00**.

* * * * * * *

Based on the above findings, it is hereby **AWARDED and ORDERED** that:

1. **TRICON ENTERPRISES, INC.**, the Employer, shall pay forthwith to the Funds the amount of **$575,554.74**, as specifically set forth in paragraph 22 above. A check shall be made payable to the "NJBLSBF - Delinquency Department" and forwarded to 3218 Kennedy Blvd., Jersey City, NJ 07306. A copy of the check shall be forwarded to the Fund's Counsel:. Kroll Heineman & Carton, Metro Corporate Campus I, 99 Wood Avenue, Suite 307, Iselin, New Jersey, 08830 attn: Albert G. Kroll, Esq.; and

2. Furthermore, the Employer shall remain obligated to the Funds, specifically for adhering to the terms and conditions of the Agreement and for submitting timely contributions to the Funds; and

3. Furthermore, the Employer shall cease and desist from any action which violates the above referenced Agreement and/or Trust Agreement(s) concerning contributions to the Funds; and

4. Furthermore, the Funds and Union shall be authorized to examine all records of the Employer, including all payroll and financial records, in the event the Employer is unwilling or unable, or claims he is unwilling or unable, to pay contributions due to the Funds, said examinations being necessary for the Funds and the Union to determine whether in fact there are assets, the location of such assets, and whether assets have been conveyed, directly or indirectly to any other person or entity and, if requested, by producing the following documents:

---

9. Notes submitted in support of the audit report revealed that approximately 230 hours of benefits were paid twice and Tricon received adjustments for the double payments.

A. Bank accounts;
B. Federal and state tax returns;
C. Financial statements;
D. Documents evidencing ownership interest in real estate, motor vehicle, any and all equipment, pension, life or profit sharing plans, stocks, bonds, securities or other tangible goods;
E. Accounts receivable and accounts payables;
F. Any judgments or liens by or against the Employer;
 G. Any and all loans, promissory notes, bills of exchange or commercial paper made  by or on behalf of the Employer;

5. Finally, in the event it is necessary for the Trustees of the Funds to enforce this AWARD and ORDER in court, the Employer shall be responsible for all court costs including, but not limited to, the filing fee of $400.00.

Date:   February 23, 2017                        _____/JJPierson/_____

                                                 **J. J. PIERSON, Esq., Arbitrator**


STATE OF NEW JERSEY)
                                :SS
COUNTY OF MORRIS )

I, J. J. PIERSON, Esq., on my oath, do attest to being the person. who has executed the foregoing instrument and issued the above Award on February 23, 2017 to:

**Bradley Parsons, Esq.**
Kroll Heineman Carton
99 Wood Avenue South - 307
Iselin, NJ 08830
Bparsons@krollfirm.com

**Jill Sorger, Esq.**
Tobia & Sorger Esqs., LLC
500 Supor Boulevard
Harrison, NJ 07029
jsorger@icloud.com


                               _____/JJPierson/_____
                               J. J. Pierson, Attorney - at - Law, State of New Jersey

Bradley M. Parsons, Esq. (BP-8305)
**KROLL HEINEMAN CARTON, LLC**
Metro Corporate Campus I
99 Wood Avenue South, Suite 307
Iselin, New Jersey 08830
Tel: (732) 491-2100
Fax: (732) 491-2120
Attorneys for Petitioners

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TRICON ENTERPRISES, INC., | ) | Hon. Claire C. Cecchi |
| | ) | |
| Petitioners, | ) | Civil Action No.: 17-cv-2168 |
| | ) | |
| v. | ) | |
| | ) | |
| NEW JERSEY BUILDING LABORERS | ) | |
| STATEWIDE BENEFIT FUNDS AND THE | ) | |
| TRUSTEES THEREOF, | ) | |
| | ) | |
| Respondent/Cross-Petitioner. | ) | |
| | ) | |

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CONFIRM ARBITRATION AWARD AND TO DISMISS COMPLAINT FOR DECLARATORY JUDGMENT

---

**KROLL HEINEMAN CARTON, LLC**
Metro Corporate Campus I
99 Wood Avenue South, Suite 307
Iselin, New Jersey 08830
(732) 491-2100

**BRADLEY M. PARSONS**
**and JENNIFER CHANG**
On the Brief

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

ARGUMENT .............................................................................................................. 10

CONCLUSION ........................................................................................................... 25

i

TABLE OF AUTHORITIES

**Cases**

Agathos v. Starlite Motel, 977 F.2d 1500, 1505 (3d Cir. 1992) ................................. 16

AT & T Technologies v. Comm. Workers of America, 475 U.S. 643 (1986)............................. 13

Bakery & Confectionery Union and Indus. Int'l Pension Fund v. Ralph's Grocery Co., 118 F.3d 1018, 1021 (4th Cir.1997) ................................................................. 17

Beck v. Reliance Steel Products Co., 860 F.2d 576, 579 (3d Cir.1988)......................................... 13

Brentwood Med. Assocs. v. United Mine Workers of Am., 396 F.3d 237, 241 (3d Cir.2005).... 12

Cent. Pa. Teamsters Health & Welfare Fund v. Scranton Bldg. Block Co., 882 F.Supp. 1542, 1544 (E.D. Pa 1995) .................................................................................... 17

Cent. Pennsylvania Teamsters Pension Fund v. McCormick Dray Line, Inc., 85 F.3d 1098, 1103 (3d Cir. 1996) ................................................................................................ 17

Cent. States, Se. & Sw. Areas Pension Fund v. Indep. Fruit & Produce Co., 919 F.2d 1343, 1349 (8th Cir. 1990) ................................................................................................. 14

Cent. States, Se. & Sw. Areas Pension Fund v. Joe McClelland, Inc., 23 F.3d 1256, 1259 (7th Cir. 1994).................................................................................................................. 16

Cent. States, Se. & Sw. Areas Pension Fund v. Kroger Co., 73 F.3d 727, 730 (7th Cir.1996)....14

Cent. States, Se. & Sw. Areas Pension Fund v. Kroger Co., 226 F.3d 903, 911 (7th Cir. 2000) . 17

Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir.2003) .................................................. 11

Eichleay Corp. v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, 944 F.2d 1047, 1056 (3d Cir.1991) ......................................................................................... 12, 21

Excel Corp. v. United Food & Commercial Workers, 102 F.3d 1464, 1468 (8th Cir.1996)........ 15

Fuchs v. Tara General Contracting, Inc., 2009 WL 2922840 at * 7 (E.D.N.Y. Sept. 8, 2009) ... 20

Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, AFL–CIO v. Owens–Illinois, Inc., 758 F.Supp. 962, 974 (D.N.J.1991) ......................................................... 22

Haskins v. First American Title Ins. Co., 866 F.Supp. 2d 343, 348 (D.N.J. 2012) ...................... 24

Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) ................................................. 23

Jeereddi A. Prasad, M.D., Inc. v. Investors Assocs., Inc., 82 F.Supp.2d 365, 371 (D.N.J.2000). 22

Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980) ........................................................ 22

Local 153 v. Trust Co. of New Jersey, 105 N.J. 442, 448 (1987)........................................... 12

Medeva Pharma Suisse A.G. v. Par Pharmaceuticals, 774 F. Supp 2d 691, 694 (D.N.J. 2011)... 23

N.Y. State Teamsters Conference Pension & Retirement Fund v. UPS, 382 F.3d 272, 280 (2d Cir.2004)............................................................................................................... 17

Nami v. Fauver, 82 F.2d 63, 65 (3d Cir. 1996)................................................................ 23

News Am. Publ'ns, Inc. Daily Racing Form Div. v. Newark Typographical Union, Local 103, 918 F.2d 21, 24 (3d Cir.1990) ............................................................................... 13

Painewebber Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir.1990) ..................................... 13

Peachlum v. City of York, 333 F.3d 429,433 (3d Cir.2001) ............................................. 24

Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 406 (1967) .............................. 14

Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 69 (2010) ....................................................... 13

Sandvik AB v. Advent Intern. Corp., 220 F.3d 99, 112 (3d Cir. 2000)....................................... 14

Steelworkers v. American Manufacturing Company, 363 U.S. 564 (1960) ................................. 11

Steelworkers v. American Manufacturing Company, supra, at 568 ........................................ 11

Steelworkers v. Enterprise Wheel & Car Company, 363 U.S. 593 (1960).................................. 12

Steelworkers v. Enterprise Wheel & Car Corporation, supra, at 596 ................................... 12, 13

Steelworkers v. Warrior & Gulf Navigation Company, 363 U.S. 574 (1960)............................... 12

Step-Saver Data Systems, Inc. v. Wyse Tech., 912 F.2d 643, 647-48 (3d Cir.1990). ................. 25

Swepco Tube LLC v. Local 427, IUE–CWA, AFL–CIO, No. 07–767, 2008 WL 746670, at *5  23

Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 136-
37 (3d Cir.1993) ............................................................................................................ 18

Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir.2005) ................................... 25

United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379 (3d Cir.1995) .. 11

United Transp. Union Local 1589, supra, 51 F.3d at 380 ...................................................... 12, 21

Volkman v. United Transp. Union, 73 F.3d 1047, 1050 (10th Cir.1996)................................... 17

**Statutes**

9 U.S.C. § 2 ..................................................................................................................... 10

9 U.S.C. § 9.............................................................................................................. 2, 10, 22

9 U.S.C. § 10(a) .............................................................................................................. 11

Id. § 9 ............................................................................................................................ 10

29 U.S.C. § 1145 .............................................................................................................. 14

## PRELIMINARY STATEMENT

Respondent/Cross-Petitioner New Jersey Building Laborers Statewide Benefit Funds ("Funds") and the Trustees thereof ("Trustees") (collectively, "Respondent/Cross-Petitioner") submit this memorandum of law in support of its Cross Petition to confirm the arbitration award and order issued on February 23, 2017 ("Audit Award") in favor of Respondent/Cross-Petitioner and against Petitioner Tricon Enterprises, Inc. ("Tricon" or "Petitioner"), and in support of its Motion to Dismiss Petitioner's Complaint for a Declaratory Judgment. The Audit Award confirmed the findings of a payroll compliance audit ("Audit"), for the period from January 1, 2010 through December 31, 2012 ("Audit Period"), which reflected that Tricon had failed to make fringe benefit contributions to the Funds, which were required per the terms of Tricon's Collective Bargaining Agreements, for the performance of CBA-covered work, in the amount of $264,837.41 May 12, 2017 Certification of Bradley M. Parsons, Esq. ("Parsons Cert."), Ex. A.

During the Audit Period, Tricon was signed to a single CBA, the CBA between the New Jersey Building Laborers' District Council and the Building, Site and General Construction Contractors and Employers ("Local 3 CBA"), Parsons Cert., Ex. C), with effective dates from May 1, 2007 through May 1, 2013. Tricon was bound to this CBA, exclusively during the Audit Period, by virtue of its execution of three different Short Form Agreements, in 2003, 2007 and 2010, each of which expressly incorporated the Local 3 CBA and each of which directed that "the permanent arbitrator appointed by the Trustees of the Funds shall decide all matters concerning wages and benefits, including all matters of procedural and substantive arbitrability." Parsons Cert., Ex. B. Subsequent to the Audit Period, on February 1, 2013, Tricon signed a second CBA with Laborers International Union of North America, Asbestos, Lead & Hazardous

1

Waste Laborers Local 78 ("Local 78 Agreement"). <u>Parsons Cert., Exs. D and E.</u>

As it argued during arbitration, Tricon argues in its Petition that the audit results were not arbitrable and must have been overstated. Tricon's argument depends entirely on its repeated assertions that the relevant CBA to the audit does not "cover yard employees," <u>Tricon Petition, ¶¶ 9, 12, 14, 17, 19, 31, 32 and 33</u>. But this argument ignores the fact that the only CBA in operation between the parties during the 2010-2012 Audit Period, the Local 3 Agreement, expressly includes yard work and mandates that fringe benefits be paid on it. <u>See</u> <u>Local 3 CBA, p. 7, Article II: "Work and Territorial Jurisdiction," Sec. 2.10</u> (CBA Employers recognize the Union's claim to all work jurisdiction as set forth herein, including "Miscellaneous: All yardmen, . . . the manning and servicing of all tool rooms, tool sheds, material storage and distribution points, warehouse workers, cleaners, debris handlers, material yards, junk yards, . . . and all maintenance work . . . .").

Given that the CBA language, expressly incorporating "yardwork," was directly read into the record by the Funds during the underlying arbitration and was directly referenced by the Award, <u>see Audit Award, p. 4, FN 3 (incorrectly cited as Article 11, rather than Article II), p. 5, FN 6 and p. 6, ¶ 20</u>), it is difficult to comprehend why Tricon continues to argue that the work was outside the CBA and continues to argue that the audit's inclusion of "yardwork" was outside the scope of the CBA's arbitration clause. The Audit Award notes that the CBA "expressly includes the type of work described by [the Funds'] witness." <u>Audit Award, ¶ 20</u>. And the Petitioner signed no less than three Short Form Agreements, expressly committing "all matters concerning wages and benefits" for CBA work to the jurisdiction of the Funds' permanent arbitrator. The dispute over the Audit results was plainly arbitrable.

2

The hearing was convened on October 28, 2015, and following both parties' submission of post-hearing briefs, the Arbitrator issued the Audit Award, finding that: the Funds' claim for unpaid benefits was arbitrable pursuant to the Local 3 CBA; Tricon violated the CBA by failing to make required contributions and was thereby liable to the Funds; and no further revisions to the audit were merited. Audit Award ¶¶ 17 – 21. The Arbitrator ordered a make-whole remedy. Audit Award ¶ 22.

Just as clear as the arbitrator's jurisdiction to hear the disputed audit results, is the reasonableness of his findings.  In finding that the work in the audit was CBA-covered and that benefits were due for it, the arbitrator considered a record that included:  Petitioner's own testimony, describing the "yard work" performed by non-union workers, which tracked almost exactly the contract language, describing CBA-covered work by "yard men," Audit Award, FN 6 and ¶ 20; payroll records that reflected that Union members who allegedly performed non-CBA work as asbestos removal "Supervisors" were not licensed as supervisors as required by New Jersey regulations, Audit Award, ¶¶ 15 and 16; that Union members in the Audit had had Union dues withdrawn from their paychecks, suggesting that the work was Union in nature, Audit Award, ¶ 20; direct cash payments to a subcontractor who Tricon testified did not perform CBA-covered work, but whose contract and payroll documents reflected CBA-covered salvage work, see Parsons Cert., Ex. F.  The well-reasoned Award draws its essence from the CBA and is supported by the record. Accordingly, pursuant to 9 U.S.C. § 9, the Court should confirm the Award as a final judgment.

## STATEMENT OF FACTS

### I.    THE CBA

During the Audit Period, Tricon was a signatory to three Short Form Agreements, Parsons Cert., Ex. B, incorporating by specific reference the terms and conditions of the Local 3 CBA. Audit Award ¶ 1. On or about November 8, 2003, June 18, 2007 and July 2, 2010, President of Tricon, Denise Petrizzo ("Ms. Petrizzo") executed the Short Form Agreements on behalf of Tricon.  Audit Award ¶ 17, FN 8; see also Parsons Cert., Ex. B.  The Local 3 CBA covers "all employees employed by [Tricon] engaged in all work of any description set forth under Article II, Section 2.10, Work Jurisdiction, below."  Local 3 CBA, Article I, § 1.10. Article X of the Local 3 CBA provides that "[f]ringe benefit payments shall be due on all hours paid for all work assigned to a laborer by the Employer. … Benefits shall be paid on behalf of all persons performing work covered by this Agreement, regardless of union membership." Local 3 CBA, Article X, § 10.70(k).  Pursuant to Article XIV of the Local 3 CBA, the Employer is obligated to contribute on behalf of covered employees to the Funds for all work covered by the agreement.  Id. at Article XIV, §§ 14.00 – 14.90.

Article XV, section 15.50(c) provides that the Funds

shall have the right to require such reports by the Employers as are necessary to the fulfillment of the agreements and declarations of trusts and the contracts of insurance, as may apply. The [Funds] shall also have the right to inspect at all reasonable times the payroll, employment and such other records of the Employer as are pertinent to questions of accuracy or comprehensiveness of the reports of the Employer.

Local 3 CBA, Article XVI, § 15.50(c).

The employer may only subcontract CBA-covered work to signatory contractors.  Local 3

2

CBA, Article XVII, § 17.10. The employer is also liable for delinquent contributions owed to the Funds by a subcontractor. Id. Article XVII, § 16.10.

Each of the three Short Form Agreements executed by Tricon expressly direct that "the permanent arbitrator appointed by Trustees of the funds shall decide all matters concerning wages and benefits including all matters of procedural and substantive arbitrability." Parsons Cert., Ex. B.

Subsequent to the Audit Period (2010-2012), on February 1, 2013, Tricon executed the Local 78 CBA. Parsons Cert., Ex. D. The Local 78 CBA's effective term was "on and after February 1, 2013 to July 31, 2015." Parsons Cert., Ex. E. The Local 78 CBA's language is less specific than the Local 3 CBA, regarding coverage of "yardwork." But the Local 78 CBA also does not expressly exclude "yardwork." The work jurisdiction language of the Local 78 CBA reads:

> "The parties recognize the exclusive jurisdiction of the Union over the removal, abatement, encapsulation or decontamination of asbestos, lead, mold, or other toxic or hazardous waste or materials which work shall include, but not be limited to: . . . as well as the servicing and operation of tools and performance of all work related to the sorting, labeling, bagging, cartooning, crating, packaging and movement of . . . hazardous waste or materials for disposal."

Local 78 CBA, Art. IV.

Thus, while "yard work" is not expressly included in the Local 78 CBA, neither is it expressly rejected. In any event, the Local 78 CBA was not in operation during the Audit Period. Its terms could have no impact on the work conducted during the Audit Period and thus no relevance to the Funds' audit. The Local 78 CBA does expressly require signatory employers, like Tricon, to contribute to the Funds (the same funds as the Local 3 CBA) for covered work,

see Local 78 CBA, Art. VII; requires signatory employers to submit to audits of its fringe benefit contributions, see Art. VII, Sec. 12; requires signatory employers to arbitrate, relating to Fund delinquencies, Art. VII, Sec. 12(f); and requires signatory employers to be bound to the terms and conditions of the Funds' Trust Agreements and related plan documents.  Art. VII, Sec. 12(h); see also relevant sections of Trust Documents, attached to Parsons Cert., Ex. G.

## II.   **THE ARBITRATION HEARING**

Pursuant to the Local 3 CBA, an independent auditor conducted an audit of Tricon for the audit period. Audit Award ¶¶ 3 and 5. The audit revealed that Tricon failed to remit contributions for Local 3 CBA-covered work, during the Audit Period, in the amount of $264,837.41; and on or about March 30, 2015, Tricon was noticed of the delinquency.  Id. ¶¶ 14 and 8. Despite the Funds' demand for payment, Tricon failed to remit these contributions.  Id. ¶ 9.  Pursuant to the arbitration clause in the CBA, the dispute was submitted to arbitration.  Id. ¶ 11.

On or about October 28, 2015, consistent with the express language of the Short Form Agreements and the Funds' Declarations of Trust, a hearing was conducted before the Funds' permanent arbitrator for fringe benefit contribution delinquencies, arbitrator, J.J. Pierson, Esq. ("Arbitrator").  Id. ¶ 13.  The Funds presented evidence that Tricon violated Articles X and XIV of the CBA by failing to make required contributions during the audit period. Id. ¶ 18 (the Audit Award mistakenly cites to Art. XV, regarding the requirement that CBA employers contribute benefits for covered work. The successor CBA to the 2007-2012 Local 3 CBA has the Funds language in Art. XV, however the language is identical in both agreements). Anthony Sgroi, a director with Schultheis & Panettieri, LLP, the independent auditors who conducted the Tricon audit, explained the procedures used to calculate the delinquency.  Id. ¶ 14, FN 4.  The auditors

relied on Tricon's records to calculate the total payroll hours worked by the subject employees, and considered all discrepancies between the reported hours and the audit findings, including cash disbursements in connection with certain jobsites and misclassification of employees. Id.

Mr. Sgroi testified that, when Tricon disputed the findings and was able to substantiate those disputes with reliable documentation, the findings were revised downward. For instance, concerning Tricon's purported "supervisors," which were alleged to be outside the work jurisdiction of the Local 3 CBA, the auditors requested additional information, including the required licenses and certifications for such supervisors. Id. ¶ 14, FNS 3 and 4. Mr. Sgroi explained that where Tricon provided the licenses and certifications, the "supervisors" were removed from the audit. Id. According to Mr. Sgroi, alleged "supervisors" who were not licensed nor certified, remained in the audit. Additionally, Mr. Sgroi testified that payroll records for some "supervisors" showed that they were union members and that union dues were deducted from their wages, indicating that Tricon itself treated them as CBA-covered employees during the Audit Period. Id. Accordingly, these members' work remained in the audit. Id.

Mr. Sgroi testified that cash disbursements to a subcontractor, JRC Construction Co., Inc., ("JRC") were treated as disbursements for CBA-covered work and included in the audit. Tricon disputed JRC's inclusion, claiming that JRC's work was outside the CBA. Mr. Sgroi noted that a review of JRC's job contracts reflected that the contracts described the work as "removal and salvage of Historical Masonry components of an Old Bank," which work appeared covered by the Local 3 CBA's work jurisdiction. See Parsons Cert., Ex. F, and Funds' July 8, 2015 Summation Statement ("Funds' Summation"), attached to Parsons Cert. as Ex. H. Ms. Petrizzo's own testimony reflected that JRC's work comprised "removing historical pieces" from

7

a building and payments to employees were for "stucco" work. Audit Award ¶ 15. The Funds further noted during the hearing, that JRC had gone on to sign the Local 3 CBA and performed substantial amounts of covered work since the Audit Period.  See Parsons Cert., Ex. G, JRC jobsite report. The cash disbursements to JRC thus stayed in the audit.

At the hearing, Tricon objected that the Arbitrator did not have jurisdiction over contributions for "yard" employees, and argued that the work was outside the scope of its CBA. Id. ¶ 15.  Ms. Petrizzo testified regarding her interpretation of the CBA and testified as to the nature of the work performed by said "yard" employees. According to Ms. Petrizzo, "yard workers" "move materials and tools from the basement" and "prep jobs and get materials" at a site located a mile from the office. Id. ¶ 15, FN 6. Ms. Petrizzo stated that she understood that such work was not covered under the CBA, and that local Union representatives had confirmed this interpretation of the CBA.  Id. In response, the Funds read into the record the Local 3 CBA language, expressly claiming jurisdiction over "yardmen" and "servicing of all tool rooms, tool sheds, material storage and distribution points, warehouse workers, cleaners, debris handlers, . . . material yards, junk yards, . . . and all maintenance work. . . ." Funds' Summation, p. 4, Audit Award, FNs 3 and 6.

Following the hearing, both parties submitted summation briefs. Parsons Cert., Ex. H. Additionally, the Arbitrator considered: a letter from Local 78 Business Manager Edison Severino, in which he stated his opinion that the Local 78 CBA did not include "the work performed in the company's yard"; an affidavit from Local 78 Business Agent Radek Korek, in which he stated that he had told Tricon, after the audit was complete, that he did not consider "yard work" covered by the Local 78 CBA, but that he offered no opinion as to whether "yard

8

work" was covered by the Local 3 CBA; and a pair of letters from Local 3 Business Manager Al Castagna, in which he stated, originally, that "work performed in the company's yard" was not covered by the Local 3 CBA, but then clarified that "yardwork" was in fact covered by the Local 3 CBA's express reference to "yardmen."   See Petition, Exs. A – C; May 11, 2017 affidavit of Alfred Castagna, Parsons Cert., Ex. I.

### III.   THE AWARD

Preliminarily, the Arbitrator found that "[b]y signing the Short Form Agreements, Tricon agreed to the terms and conditions of the Laborers' Agreement [referred to in this brief as the Local 3 CBA], including the arbitration procedures provided therein." Audit Award ¶ 17. After review of summation briefs and evidence presented, the Arbitrator found that Tricon "violated Articles X and XV of the Agreement by failing to make its required contributions to the funds between **January 1, 2010 through December 31, 2012** and was deficient and delinquent in the amount of **$264,837.41**." Id. ¶ 18 (emphasis in original). The Arbitrator observed that

> a fund contractually entitled to perform an audit of books and payroll records of an employer signatory to a collective bargaining agreement (and related trust fund documents incorporated by reference) may reasonably rely on the accuracy of the report in determining liability of the employer to the funds for delinquencies, incorrect contributions and a general breach of contract obligations. ... said report may serve as prima facie evidence of liability after notice of the claim has been given to the employer and the employer has been given reasonably opportunity to question the findings, offer information to adjust or amend the results and given the final opportunity to present evidence to correct alleged errors.

Id. ¶ 7 (footnote omitted). The Arbitrator found that the Funds had established Tricon's "failure to remit timely contributions to the Funds." Id. ¶ 19. Finding that "Tricon's explanations, defenses and responses are not supported by reliable evidence," the Arbitrator determined that Tricon's "yard" employees, cash disbursements and "supervisors" "were not excluded from the

audit findings." Id. ¶ 20. Denying Tricon's request for further revisions to the audit, the Arbitrator ordered "in accordance with the provisions of Article XVI, the Employer shall pay a principal amount of $**264,837.41** to the Funds, plus $**168,222.18** in interest, $**18,817.50** in audit costs; $**52,967.40** in liquated damages; reasonable attorneys' fees in the amount of $**66,209.25**; and the Arbitrator's fee of $**5000.00**. Id. ¶¶ 21 – 22 (emphasis in original).

The Arbitrator also ordered that Tricon "shall remain obligated to the Funds, specifically adhering to the terms and conditions of the Agreement and for submitting timely contributions to the Funds;" and "shall cease and desist from any action which violates the above referenced Agreement and/or Trust Agreement(s) concerning contributions to the Funds[.]" Id., Order ¶¶ 2 – 3.

To date, Respondent has failed to comply with the Audit Award.

## **ARGUMENT**

### I.  **LEGAL STANDARD**

Contract provisions requiring arbitration are valid and enforceable. See 9 U.S.C. § 2. Once an arbitrator reaches a decision in a matter, Section 9 permits district courts to confirm the arbitration award as a final judgment. Id. § 9. A district court may vacate an arbitration award upon application by either party if: (1) it was procured by corruption, fraud, or undue means; (2) there was "evident partiality or corruption" with respect to the arbitrator; (3) the arbitrator committed misconduct by refusing to postpone the hearing, refusing to hear pertinent and material evidence, or otherwise committing misbehavior that prejudiced the rights of a party; or (4) the arbitrator exceeded his or her powers or failed to reach "a mutual, final, and definite

10

award".  Id. § 10(a).

A court has very limited authority to vacate an arbitration award, and cannot overrule an arbitrator simply because it disagrees with the arbitrator's construction of the contract at issue. United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379 (3d Cir.1995); see also Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir.2003) (district court may vacate an arbitration award "only under exceedingly narrow circumstances").  An arbitration award must be enforced as long as the arbitrator arguably construed or applied the contract, even if the arbitrator committed a serious error. United Transp. Union Local 1589, supra, 51 F.3d at 379. "[T]here must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award."  Id. (citation omitted).

In Steelworkers v. American Manufacturing Company, 363 U.S. 564 (1960), the Court enshrined grievance arbitration as the centerpiece of the collective bargaining relationship.  See also Steelworkers v. Warrior & Gulf Navigation Company, 363 U.S. 574 (1960); Steelworkers v. Enterprise Wheel & Car Company, 363 U.S. 593 (1960) ("Steelworkers Trilogy").  The Court emphasized that a court's role in reviewing an arbitration is extremely limited.  Steelworkers v. American Manufacturing Company, supra, at 568; Steelworkers v. Enterprise Wheel & Car Corporation, supra, at 596.  Within this restrictive framework, the Court directed particular deference to the labor arbitrator.  The Court viewed the labor arbitrator as performing a unique task in the collective bargaining relationship:

> The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment.

Ibid. at 582.

This deferential standard is rooted in the Court's recognition of the labor arbitrator's knowledge of the construction industry's customs and practices.  Often, the arbitrator rules based on first-hand knowledge of the job-site at issue.  Steelworkers v. Enterprise Wheel & Car Company, supra, at 596.  "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem."  Id. at 597.  The courts will extend great deference to an arbitrator's authority to fashion appropriate remedies to fit particular situations.  Id.; see Local 153 v. Trust Co. of New Jersey, 105 N.J. 442, 448 (1987).

An arbitration award based on construction of a collective bargaining agreement cannot be vacated if the award "draws its essence" from the collective bargaining agreement.  Id.; Eichleay Corp. v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, 944 F.2d 1047, 1056 (3d Cir.1991) (noting that an award can be vacated only if it does not draw its essence from the collective bargaining agreement at issue).  An arbitration award "draws its essence" from a collective bargaining agreement if the arbitrator's interpretation "can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention."  Brentwood Med. Assocs. v. United Mine Workers of Am., 396 F.3d 237, 241 (3d Cir.2005) (quotation and citation omitted).  A district court can only disrupt an arbitrator's award if the arbitrator acted with manifest disregard for the law, or the record before the arbitrator reveals absolutely no support for the arbitrator's determination.  United Transp. Union Local 1589, supra, 51 F.3d at 380; see also Brentwood Med. Assocs., supra, 396 F.3d at 241.  A district court may not correct legal or factual errors

12

made by an arbitrator.  Id. at 240; see also News Am. Publ'ns, Inc. Daily Racing Form Div. v. Newark Typographical Union, Local 103, 918 F.2d 21, 24 (3d Cir.1990).

## II.   **THIS DISPUTE IS ARBITRABLE**

Under any reasonable reading of the contract operating between the parties, during the Audit Period, the Funds' audit findings, including the audit findings relating to "yard work," are clearly arbitrable.  The language in the Local 3 CBA is express that "yardmen" are covered, Local 3 CBA Art. 2.10, and that benefits must be paid for covered work, id. at Art. 10.70(k). Just as clear cut is the arbitrator's jurisdiction over "all matters concerning wages and benefits including all matters of procedural and substantive arbitrability."  See Parsons Cert. Ex. C.  If this Court determines that the present dispute falls within the scope of the arbitration agreement operating between the Funds and Tricon, it must defer to arbitration. Painewebber Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir.1990)(overruled on other grounds); see also AT & T Technologies v. Comm. Workers of America, 475 U.S. 643 (1986); Beck v. Reliance Steel Products Co., 860 F.2d 576, 579 (3d Cir.1988)

Parties are free to contract for nearly anything – including as relevant here, questions of "gateway" arbitrability "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 69 (2010). Here, Petitioner has signed three different Short Form Agreements, each of which expressly direct that "the permanent arbitrator appointed by the funds shall decide all matters concerning wages and benefits including all matters of procedural and substantive arbitrability." See Parsons Cert. Ex. B.

The present parties have clearly and expressly agreed to arbitrate questions relating to the

Funds' collection of benefits.  These express language of the Local 3 CBA and the Short Form

Agreements clearly and unambiguously establish the CBA's jurisdiction over "yard work" and

the arbitrator's jurisdiction over wage and benefit controversies and even arbitrability questions.

The audit, in its entirety, is arbitrable.  See Sandvik AB v. Advent Intern. Corp., 220 F.3d 99, 112

(3d Cir. 2000)("[P]arties may of course provide by contract for arbitration even of arbitrability

issues."), quoting Virginia Carolina Tools v. Int'l Tool Supply, Inc., 984 F.2d 113,117 (4th

Cir.1993); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 406 (1967)(contractual

language calling for arbitration of "any controversy or claim" evidenced an intent to give a broad

scope to the arbitration agreement).

### III.   THE AWARD IS SUPPORTED BY THE RECORD

Section 515 of ERISA 515 provides:

> Every employer who is obligated to make contributions to a multiemployer plan
> under the terms of the plan or under the terms of a collectively bargained
> agreement shall, to the extent not inconsistent with law, make such
> contributions in accordance with the terms and conditions of such plan or such
> agreement.

29 U.S.C. § 1145.

It is the "collective bargaining and contribution agreements [which] establish the

employer's obligation to the pension fund." Cent. States, Se. & Sw. Areas Pension Fund v.

Kroger Co., 73 F.3d 727, 730 (7th Cir.1996) (citations omitted). As a result, any defense to a

claim under Section 515 must be based on an ambiguity that is apparent from the face of the

agreements.  Cent. States, Se. & Sw. Areas Pension Fund v. Indep. Fruit & Produce Co., 919

F.2d 1343, 1349 (8th Cir. 1990). Where language is plain and unambiguous, it cannot be

disregarded based on extrinsic evidence. Excel Corp. v. United Food & Commercial

14

Workers, 102 F.3d 1464, 1468 (8th Cir.1996).

**A.** **The Arbitrator reasonably found that fringe benefit contributions were due on all work covered by the CBA**

It is clear from the face of the Local 3 CBA that it covers "all employees employed by [Tricon] engaged in all work of any description set forth under Article II, Section 2.10, Work Jurisdiction, below." Local 3 CBA, Article I, § 1.10.

**1. The Arbitrator reasonably found that "yard work" was covered by the CBA**

The CBA explicitly covers in relevant part

[a]ll yardmen, watchmen, guards, flagmen, the manning and servicing of all tool rooms, tool sheds, material storage and distribution points, warehouse workers, cleaners, debris handlers, water boys, material yards, junk yards, asphalt plants, concrete product plants, and all maintenance work and work of skilled, semiskilled and unskilled nature. Where a Laborer is assigned as a safety man wages and benefits shall be paid in accordance with this Agreement.

Local 3 CBA, Article 2, § 2.10.

Tricon's "yard workers," according to Tricon's own testimony at arbitration, "move materials and tools," and "prep jobs and materials" in a yard holding heavy equipment. Audit Award ¶ 15, FN 6. Tricon identified no ambiguity in the Local 3 CBA language, and did not seriously argue that the CBA itself is ambiguous as to the type of work covered. Notwithstanding Tricon's citation of letters and affidavits from Union officials, generated four to six years after the work in the audit was performed – two of them referencing the Local 78 CBA, which was not in effect during the Audit Period – Tricon has not cited, in this litigation nor at arbitration, any writing or communication from the Union that could have altered the Local 3 CBA's plain language during the Audit Period. Id. Moreover, Tricon's own timesheets for the "yard" workers described the work as "labor," Audit Award ¶ 20, and Tricon's own testimony

15

described work consistent with the Local 3 CBA's express language. <u>Audit Award ¶ 15, FN 6</u>
The Arbitrator appropriately determined that the tasks performed by Tricon's yard workers – as
described by Tricon itself – unambiguously placed these workers under the jurisdiction of the
CBA. <u>Id.</u> <u>See</u> <u>Volkman v. United Transp. Union</u>, 73 F.3d 1047, 1050 (10th Cir.1996) (If the
language of the agreement is unambiguous, it may be construed as a matter of law without resort
to extrinsic evidence"); <u>Cent. States. Se. & Sw. Areas Pension Fund v. Joe McClelland, Inc.</u>, 23
F.3d 1256, 1259 (7th Cir. 1994) ("extrinsic evidence may not be used to create an ambiguity in a
pension or welfare agreement subject to ERISA").

### a. The Arbitrator reasonbably found that any purported oral modifications by the Union cannot be enforced against the Funds

There are only three recognized defenses which an employer may assert to avoid the
obligation to contribute to an employee benefit plan as required under the terms of a collective
bargaining agreement:

> (1) the pension contributions themselves are illegal ...; (2) the collective
> bargaining agreement is *void ab initio*...; and (3) the employees have voted to
> decertify the union as its [sic] bargaining representative, thus prospectively
> voiding the union's collective bargaining agreement.

<u>Agathos v. Starlite Motel</u>, 977 F.2d 1500, 1505 (3d Cir. 1992) (citations omitted). Tricon did not
assert any of these defenses, but sought equitable relief from the general rule that collective
bargaining agreements must be enforced as written. At arbitration and in its post-hearing brief,
Tricon alleged that Union representatives informed Tricon that it was not required to make
contributions for employees who performed yard work. <u>Audit Award ¶ 15, FN 6</u>. First, Tricon's
argument in this respect ignores the fact that two of the Union officials provided opinions on the
Local 78 CBA, which was not operating during the Audit Period, and that the Local 3

representative, corrected his interpretation of the Local 3 Agreement after learning from Funds counsel that Tricon had testified that the alleged "yardwork" was in fact "prep[ing] jobs and materials" related to CBA-covered work. Parsons Cert., Ex. G.

But even if the statements from Union officials had referenced an agreement that was in operation during the Audit Period, and even if the statements were timely, rather than six years subsequent to work performed, Tricon would nevertheless remain bound by its written obligation to contribute to the Funds. Cent. Pennsylvania Teamsters Pension Fund v. McCormick Dray Line, Inc., 85 F.3d 1098, 1103 (3d Cir. 1996). An oral agreement with a union cannot alter an employer's obligations to a third-party beneficiary fund. Cent. Pa. Teamsters Health & Welfare Fund v. Scranton Bldg. Block Co., 882 F.Supp. 1542, 1544 (E.D. Pa 1995); see also N.Y. State Teamsters Conference Pension & Retirement Fund v. UPS, 382 F.3d 272, 280 (2d Cir.2004) ("[V]alid collection regulations promulgated by a multiemployer plan to effectuate contributions cannot be defeated by implied or unwritten agreements between the employers and unions."); Cent. States, Se. & Sw. Areas Pension Fund v. Kroger Co., 226 F.3d 903, 911 (7th Cir. 2000) ("Because pension funds are entitled to rely on the terms of a CBA, a fund's reliance upon those terms may not be thwarted by oral understandings between the employer and the union...."); Bakery & Confectionery Union and Indus. Int'l Pension Fund v. Ralph's Grocery Co., 118 F.3d 1018, 1021 (4th Cir.1997) "( [A]n employer is not permitted to raise defenses that attempt to show that the union and the employer agreed to terms different from those set forth in the agreement").

As discussed, this is not a situation in which the collective bargaining agreement itself is ambiguous, in which case consideration of extrinsic evidence might be appropriate in

construction of the agreement.  See Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 136-37 (3d Cir.1993). Tricon did not argue that the purported understanding between Tricon and the Union ought to control in the face of ambiguities in the CBA. Rather, it argued that the asserted understanding *supersedes* the written terms of the Agreement. The Arbitrator properly concluded that this is not a recognized defense to a delinquency action by a multiemployer welfare fund; and that the coverage of the CBA could not be so limited.  Audit Award ¶ 18.

### 2. The Arbitrator reasonably determined that the CBA does not explicitly exclude "supervisors" or non-union workers from coverage

There is no language limiting the scope of the Local 3 CBA to specific categories or classifications of employees. Article X lists types of work covered by the Local 3 CBA for rate classification purposes and does not constitute an exhaustive list of work performed by laborers. Local 3 CBA, Article X, §§ 10.20 – 10.70. Section 10.70(k) provides that "[f]ringe benefit contributions shall be due on all hours paid for all work assigned to a laborer by the Employer. … Benefits shall be paid on behalf of all persons performing work covered by this Agreement, regardless of union membership."  Id. § 10.70(k). Tricon identified no language in the CBA excluding "supervisors" or delineating specific categories of employees for which fringe benefit contributions are required.  Instead, Tricon argued generally that supervisors could never be covered by a laborers' CBA.  Audit Award ¶ 15, FN 7.  Tricon provided no authority for this proposition. Further, state regulations described at the hearing established that asbestos supervisors were required to possess valid licenses and certifications.  Where Tricon produced credible proofs that claimed supervisors were licensed and certified, those individuals were

18

removed from the audit.  Where those proofs were not available, the work remained in the audit.

The findings in the Audit Award that this work was appropriately included in the audit was thus

founded on proofs adduced at hearing and grounded in the Local 3 CBA's language, directing

that fringe benefits be paid for all covered work.  Audit Award ¶¶ 18 and 20.

### 3. The Arbitrator reasonably determined that Tricon owed benefits for cash disbursements to a non-union subcontractor that the proofs established was performing Local 3 CBA work

Article XVII, section17.10 of the CBA provides that all

subcontractors who are engaged by the Employer to perform work of the kind covered by this Agreement at the site of construction, alteration, painting, demolition, asbestos removal, hazardous waste removal, or repair of a building, structure, or other construction work shall be or shall become a signatory to this Agreement. Furthermore, the Employer agrees to require all subcontractors to use laborers represented by the Union for all cleanup work at the project.

Local 3 CBA, Article XVII, § 17.10. Pursuant to the Local 3 CBA, Tricon also agreed to be

"responsible for all losses incurred by the employees or the Union in the event he subcontracts to

a subcontractor who fails to execute this Agreement." Id.  At arbitration, Tricon argued that cash

disbursements to non-union subcontractor, JRC (along with small amounts of cash disbursements

to individual employees) should have been excluded from the audit, because the work funded by

the cash was outside the relevant CBA.  However, Tricon's own testimony and documentary

evidence established that JRC was in fact performing CBA-covered masonry removal and

salvage work. Parsons Cert., Ex. F.  Tricon's own testimony established that the individual

employees, who received direct cash, were "performing 'stucco' work on Tricon's building."

Audit Award ¶ 15.  To the extent Tricon produced records concerning JRC and these employees,

they showed that these disbursements were for covered work on specific jobsites.  Audit Award ¶

14, FNs 3 and 4. Accordingly, the Arbitrator's determination that JRC and these off-payroll employees performed covered work during the audit period is supported by the record, and the Audit Award's finding that benefits were due for that work is expressly supported by the Local 3 CBA.

   **B.** **The Arbitrator reasonably concluded that Tricon had failed to present records sufficient to substantiate their claims that work in the audit was not covered by the Local 3 CBA**

     Section 15.50 of the CBA requires Tricon to maintain records adequate to allow the Funds to determine the "accuracy or comprehensiveness" of the hours reported. Local 3 CBA, Article XV, § 15.50(c). This record-keeping requirement is also express in ERISA. See 29 U.S.C. § 1059(a)(1)(employers are required to "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees"); Fuchs v. Tara General Contracting, Inc., 2009 WL 2922840 at * 7, (E.D.N.Y. Sept. 8, 2009)( "Since the employer is in the best position to know the number of hours worked, courts have determined that the policies of ERISA are advanced by the imposition of a burden that reflects the employer's duties under ERISA")(citations omitted).

     Here, having reviewed the auditors' methodology and the conclusions drawn from the documentation supplied by Tricon, as well as the testimony of Mr. Sgroi and Ms. Petrizzo at the hearing, the Arbitrator found the audit to be sound and concluded that the Funds were entitled to rely on it in determining Tricon's liability. Audit Award ¶¶ 7, 19 – 20; see also Fuchs, supra, 2009 WL 2922840, at *7 (plaintiff established prima facie case to delinquent contributions where it "offered the audit reports" constructed by a retained accounting firm as well as testimony of the firm's director who "explained the steps taken to conduct the audit and how the auditors arrived

20

at the amount of delinquent contributions due and owing"). Tricon failed to present evidence of the precise amount of work that was alleged to be outside the CBA and failed to show that the assumptions underlying the audit were incorrect. Tricon did not call as witnesses any of the workers whose hours and fringe benefit contributions are the subject of this dispute. The cross-examination of Mr. Sgroi revealed no flaws in the auditors' methodology for conducting the audit. Tricon's testimony was consistent with the Funds' audit findings that the work performed during the Audit Period was covered by the Local 3 CBA.

In view of the above, the arbitrator's finding that Tricon breached the Local 3 CBA by performing covered work without remitting benefits to the Funds, can rationally be derived from its language and context. United Transp. Union Local 1589, supra, 51 F.3d at 380. Accordingly, the liability determination draws its essence from the CBA and is supported by the record. Id.; see Eichleay Corp, supra, 944 F.2d at 1056.

## C.  The Arbitrator's Make-Whole Remedy Draws its Essence from the CBA

Similarly, the determination that the Funds sustained damages, in the amount found in the audit, due to Tricon's violation of the CBA is amply supported by the record.  Relying on the Funds' audit findings and in consideration of both parties' proofs and testimony, the Arbitrator reasonably concluded that Petitioner was liable to Respondent for lost benefit contributions in the amount of $264,837.41.  Audit Award ¶ 22.  The Local 3 CBA provides that the employer is responsible for "attorneys' fees and court arbitration costs" associated with collection of delinquent fringe benefits.  Local 3 CBA, Article XV, § 15.30(a). Tricon is also required to pay "audit costs, interest, liquidated damages and attorneys' fees irrespective of whether or not litigation is commenced." Id. § 15.30(d).  Accordingly, the Arbitrator also ordered Tricon to pay

$168,222.18 in interest, $18,817.50 in audit costs, $52,967.40 in liquated damages, reasonable attorneys' fees in the amount of $66,209.25 and $5000.00 in the Arbitrator's fees.  Audit Award ¶ 22; see Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, AFL–CIO v. Owens– Illinois, Inc., 758 F.Supp. 962, 974 (D.N.J.1991) (arbitrators have broad discretion to fashion a remedy, so long as the remedy draws its essence from CBA), aff'd, 941 F.2d 1201 (3d Cir.1991); see also Swepco Tube LLC v. Local 427, IUE–CWA, AFL–CIO, No. 07–767, 2008 WL 746670, at *5 (D.N.J. Mar.18, 2008) (acknowledging arbitrator's wide latitude in fashioning an appropriate remedy).

    As none of the grounds warranting vacation or modification of the Audit Award apply here, and since the Arbitrator's findings were firmly grounded in the CBA and underpinned by a hearing record based on both parties' proofs, this Court must confirm the Award. See 9 U.S.C. § 9 (mandating that a district court "grant such an order [confirming the arbitration award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title"); Jeereddi A. Prasad, M.D., Inc. v. Investors Assocs., Inc., 82 F.Supp.2d 365, 371 (D.N.J.2000) ("Absent any valid challenge to the arbitration award, this Court must grant Petitioner's motion and confirm the award.").

### D. The Petitioner's Complaint for Declaratory Relief Should be Dismissed Because Interpretation of the CBA is Expressly Arbitrable

    When deciding whether to dismiss a claim pursuant to Fed.R.Civ.P. 12(b)(6), the court is testing the sufficiency of a complaint.  Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The court must accept as true all well-pled allegations of fact in the plaintiff's complaint, and any reasonable inferences that may be drawn

therefrom, to determine whether "under any reasonable reading of the pleadings, the plaintiff maybe entitled to relief." Nami v. Fauver, 82 F.2d 63, 65 (3d Cir. 1996). Courts will grant a motion to dismiss "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In this case the Court cannot grant Tricon the relief it seeks, because the only contract at issue with respect to the Funds audit findings, and the inclusion of "yardwork" during the Audit Period – the Local 3 CBA – clearly and unambiguously commits all questions regarding payment of wages and benefits to the Funds' permanent arbitrator.

Discretionary language in the Declaratory Judgment Act means that federal courts have "no compulsion to exercise the jurisdiction" granted by the statute. Medeva Pharma Suisse A.G. v. Par Pharmaceuticals, 774 F. Supp 2d 691, 694 (D.N.J. 2011), citing Brillhart v. Excess Ins. Co. Of Am., 316 U.S. 491, 494 (1942). When considering Plaintiff's request for declaratory judgment, this court should consider that "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Medeva Pharma Suisse, 774 F. Supp 2d at 694, quoting Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995). In this case, with questions regarding liability for benefits due for work performed under the Local 3 CBA committed firmly to arbitration, this Court should yield to the arbitration forum that the parties bargained for.

Tricon's claim for Declaratory relief is supplanted by its arbitration agreements with the Fund, and thus its Complaint should be dismissed. Whether a cause of action is "supplanted by an existing arbitration agreement" is determined by a two-step test: (1) courts first determine whether a valid agreement exists; (2) if an arbitration agreement exists, the court then determines

whether the agreement encompasses the dispute at issue. Haskins v. First American Title Ins. Co., 866 F.Supp. 2d 343, 348 (D.N.J. 2012), citing Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir.2005).

In determining both the existence and the scope of an arbitration agreement, "there is a presumption in favor of arbitrability." Trippe Mfg. Co., 401 F.3d at 532. In this case, the Local 3 CBA expressly includes the work that Tricon disputes and expressly calls for CBA-scale wages and benefits to be paid for it. And the arbitration clause in the Short Form Agreements clearly commits questions concerning wages and benefits to the Funds' permanent arbitrator. Tricon's Declaratory Complaint must be dismissed. Were this Court to rule on Tricon's Complaint, it would deprive both parties of the arbitration venue for which they bargained. Accordingly, as the arbitration agreement supplants Tricon's cause of action, Tricon's Complaint should be dismissed.

With respect for any Declaratory ruling Tricon may seek with respect to inclusion of "yardwork" in the Local 78 CBA, that claim must be dismissed, because it is not ripe. The Funds' current claim for benefits is based entirely on the Local 3 CBA that was operating during the Audit period. There is no present claim from the Funds for benefits for "yardwork" under the Local 78 CBA. In the context of a complaint for declaratory judgment, the ripeness doctrine "counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." Peachlum v. City of York, 333 F.3d 429,433 (3d Cir.2001).

The test for ripeness of a declaratory judgment assesses: (1) the adversity of the interest of the parties and the immediacy of the need for declaratory relief; (2) the conclusiveness of the

judicial judgment, whether the action would amount to more than just an advisory opinion based upon a hypothetical set of facts; and (3) the practical help or utility of the requested judgment. Step-Saver Data Systems, Inc. v. Wyse Tech., 912 F.2d 643, 647-48 (3d Cir.1990). Only if all three of these requirements is met is the claim ripe for declaratory relief. Travelers Ins. Co., v. Obusek, 72 F.3d 1148, 1154 (3d Cir.1995). In the present matter, there is no present claim for "yardwork" benefits under the Local 78 CBA; there is no immediacy and any Declaratory judgment would be based on a hypothetical and thus, of little practical value. Tricon's Complaint is not ripe and should be dismissed.

## CONCLUSION

For the foregoing reasons, Respondent/Cross-Petitioner respectfully requests that this Court dismiss Petitioner's Complaint for Declaratory Judgment, and confirm the Award.

Respectfully submitted,

**KROLL HEINEMAN LLC**
Attorneys for Petitioners

_s/BRADLEY M. PARSONS_
By:   Bradley M. Parsons

DATED: May 12, 2017
at Iselin, New Jersey

Bradley M. Parsons, Esq. (BP8305)
**KROLL HEINEMAN CARTON, LLC**
Metro Corporate Campus I
99 Wood Avenue South, Suite 307
Iselin, New Jersey 08830
Tel: (732) 491-2100
Fax: (732) 491-2120
*Attorneys for Petitioners*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRICON ENTERPRISES, INC., | ) Hon. Claire C. Cecchi |
| | ) |
| Petitioner, | ) Civil Action No. 17-cv-2168 |
| | ) |
| v. | ) **CIVIL ACTION** |
| | ) |
| NEW JERSEY BUILDING LABORERS | ) **[PROPOSED]ORDER DISMISSING** |
| STATEWIDE BENEFIT FUNDS AND THE | ) **PETITION TO VACATE** |
| TRUSTEES THEREOF, | ) **ARBITRATION AWARD, AND** |
| | ) **CONFIRMING** |
| Respondent. | ) <u>**ARBITRATION AWARD**</u> |

**THIS MATTER** having come before the Court by Kroll Heineman Carton, LLC, (Bradley M. Parsons, Esq., appearing) attorneys for Respondent, pursuant to a Motion to Dismiss Petition to Vacate Arbitration Award, and Confirm the Arbitration Award and Entry of Judgment; this Court having fully considered the moving and opposition papers submitted by the parties, as well as the arguments of counsel, if any, and for good and sufficient cause shown;

**IT IS** on this 19th day of June 2017,

**ORDERED, ADJUDGED, AND DECREED** that the Petition to Vacate Arbitration Award and Complaint for Declaratory Judgment are hereby DISMISSED; and it is further

**ORDERED, ADJUDGED, AND DECREED** that the Opinion and Award of February 23, 2017 shall and are hereby CONFIRMED.

_____

Hon. Claire C. Cecchi, U.S.D.J.

Bradley M. Parsons, Esq. (BP8305)
**KROLL HEINEMAN CARTON, LLC**
Metro Corporate Campus I
99 Wood Avenue South, Suite 307
Iselin, New Jersey 08830
Tel: (732) 491-2100
Fax: (732) 491-2120
*Attorneys for Petitioners*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| TRICON ENTERPRISES, INC., | ) | Hon. Claire C. Cecchi |
| | ) | |
| Petitioner, | ) | Civil Action No. 17-cv-2168 |
| | ) | |
| v. | ) | **CIVIL ACTION** |
| | ) | |
| NEW JERSEY BUILDING LABORERS | ) | **[PROPOSED] JUDGMENT** |
| STATEWIDE BENEFIT FUNDS AND THE | ) | |
| TRUSTEES THEREOF, | ) | |
| | ) | |
| Respondent. | ) | |

**THIS MATTER** having come before the Court by Kroll Heineman Carton, LLC (Bradley M. Parsons, Esq., appearing) pursuant to a Motion to Dismiss Petition to Vacate Arbitration Award, and Confirm the Arbitration Award and Entry of Judgment; the Court having fully and thoroughly considered the matter as well as any pleadings, motions, and oral argument of counsel; and a decision having been duly rendered by this Court;

**IT IS** on this 17th day of April 2017,

**ORDERED AND ADJUDGED** that Respondent shall recover from Petitioner Tricon Enterprises, Inc., the sum of $575,554.74.

_____
Judge, United States District Court

Bradley M. Parsons, Esq. (BP8305)
**KROLL HEINEMAN CARTON, LLC**
Metro Corporate Campus I
99 Wood Avenue South, Suite 307
Iselin, New Jersey 08830
Tel: (732) 491-2100
Fax: (732) 491-2120
*Attorneys for Petitioners*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TRICON ENTERPRISES, INC., | ) | Hon. Claire C. Cecchi |
| | ) | |
| Petitioner, | ) | Civil Action No. 17-cv-2168 |
| | ) | |
| v. | ) | **CIVIL ACTION** |
| | ) | |
| NEW JERSEY BUILDING LABORERS | ) | **CERTIFICATE OF SERVICE** |
| STATEWIDE BENEFIT FUNDS AND THE | ) | |
| TRUSTEES THEREOF, | ) | |
| | ) | |
| Respondent. | ) | |

I hereby certify that I caused a copy of the: 1) Notice of Motion to Dismiss Petition to Vacate Arbitration Award, and Confirm Arbitration Award and Entry of Judgment; 2) Brief in Support of Motion to Dismiss Petition to Vacate Arbitration Award, and Confirm Arbitration Award and Entry of Judgment; 3) Certification of Bradley M. Parsons, Esq.; 4) Proposed Form of Order; 5) Proposed Form of Judgment; and 6) Certificate of Service to be sent via first-class and certified mail, return receipt requested, to counsel for Petitioner at the following address:

Ronald L. Tobia, Esq.
Tobia & Sorger, Esqs., LLC
500 Supor Boulevard
Harrison, New Jersey 07029

                                        _s/ BRADLEY M. PARSONS_
                                        BRADLEY M. PARSONS

DATED:  May 12, 2017